```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF OKLAHOMA
```

WILLIAM BUD YOCHUM,                )
                                   )
            Plaintiff,             )
                                   )
                                   )   Case No. CIV-20-448-RAW-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
            Defendant.             )

**REPORT AND RECOMMENDATION**

Plaintiff William Bud Yochum (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. He appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 47 years old at the time of the ALJ's decision. He has a limited education and past relevant work as a press brake operator and a store laborer. Claimant alleges an inability to work beginning on October 1, 2016, due to limitations resulting from problems with his knees, neck, and back, carpel tunnel syndrome, cutting off his thumb, and depression.

### Procedural History

On June 1, 2018, Claimant filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On

3

February 19, 2020, ALJ B.D. Crutchfield conducted a hearing in Tulsa, Oklahoma, at which Claimant testified. On April 21, 2020, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on September 29, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to properly consider the entire record and all of his impairments; (2) failing to properly review the medical evidence and the medical opinions of Claimant's physicians; and (3) failing to perform a proper step-five determination.

### Step Two and Four Analysis

In her decision, the ALJ found Claimant suffered from severe impairments of obesity, degenerative disc disease (DDD) of the lumbar and cervical spine, and major depressive disorder. (Tr. 12). She determined Claimant could perform light work with only

4

occasional contact with the public. (Tr. 17).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of sewing machine operator, labeler, and power screwdriver operator, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 22, 339-40). As a result, the ALJ concluded Claimant had not been under a disability since June 1, 2018, the date the application was filed. (Tr. 22-23).

Claimant argues the ALJ erred at step two and later steps of the sequential evaluation process by failing to properly consider his hypertension, chronic pain syndrome, postlaminectomy syndrome, and problems with his hands. Claimant asserts that even if these conditions were considered nonsevere, the ALJ was required to consider them throughout the disability process and in combination with his severe impairments.

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The burden of showing a severe impairment is "de minimis," yet "the mere presence

5

of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007), quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28, 1985 WL 56856 (Jan. 1, 1985).

To the extent Claimant contends his hypertension, chronic pain syndrome, postlaminectomy syndrome, and problems with his hands should have been determined severe at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of a claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291–292 (10th Cir. 2008).

The ALJ considered Claimant's hypertension, chronic pain syndrome, postlaminectomy syndrome, and problems with his hands in her discussion of the evidence and assessment of Claimant's RFC. She noted Claimant claimed he could not work because of his knees,

6

back, carpal tunnel syndrome, cut off thumb, and depression. (Tr. 17). She discussed Claimant's hypertension, noting it was managed with medication and that the record contained no evidence that he received emergent care, was hospitalized for hypertensive or hypotensive episodes, or had end organ damage. (Tr. 13, 714-87). The ALJ considered Claimant's cardiac functioning in conjunction with his obesity, noting that although there was little evidence of any quantifiable impact of Claimant's obesity on his pulmonary, musculoskeletal, endocrine, or cardiac functioning, it was considered within the limitations of his RFC. (Tr. 15, 19-20). Moreover, Claimant did not indicate at the hearing that his hypertension caused him any limitations, nor did he mention that he suffered a heart attack. (Tr. 38, 40).

The ALJ also considered Claimant's complaints about his hands. She noted that Claimant's EMG/nerve conduction studies from 2015 revealed bilateral median neuropathy at the wrists consistent with carpal tunnel, moderate on the right and mild on the left. (Tr. 13, 684-86). Yet Claimant did not complain of issues with his carpal tunnel syndrome throughout 2018 and 2019 nor did he receive any treatment. (Tr. 13, 714-87). Tinel's sign was negative in the bilateral wrists throughout 2019 and Claimant had normal wrist strength. (Tr. 13, 845, 847-49, 850-51, 868-69, 872-73).

Regarding Claimant's post-surgery back pain and pain management, the ALJ specifically discussed these throughout the

decision. Claimant complained of low back pain in October of 2018. He had reduced lumbar motion of flexion and extension at the extremes, but normal standing alignment and gait. (Tr. 18, 839-40). In November of 2018, Claimant indicated his medication helped with his pain and made him more functional. (Tr. 18, 414-15). After Claimant underwent an MRI of his cervical spine in February of 2019, which the ALJ discussed the findings in detail in her decision, Claimant's doctor reviewed the MRI and recommended meloxicam, physical therapy, and low impact aerobic activity for Claimant. (Tr. 18, 847-49, 852-53).

Claimant was seen by another doctor for pain management in July of 2019. Claimant reported that when taking Norco in the past, he had experienced complete pain control. Claimant's Norco was refilled, and by the end of July of 2019, he reported his pain was under better control and no adverse medication side effects. (19, 871-74, 867-70). Claimant continued to do well on the medication in August of 2019, with his doctor noting Claimant's pain was adequately controlled. (Tr. 19, 864-66). Through November of 2019, Claimant continued to do well on his medication with no side effects and adequate control of his pain. (Tr. 19, 855-63). The ALJ considered obesity in conjunction with Claimant's pain and indicated that although it likely exacerbated his back pain and made physical activity more difficult, the pain did not rise to the functionally limiting level alleged by Claimant. (Tr. 19-20).

The Court finds no error in the ALJ's consideration of the evidence of Claimant's hypertension, chronic pain syndrome, postlaminectomy syndrome, and problems with his hands. She specifically discussed the evidence and indicated that she considered all of Claimant's medically determinable impairments, including those that were nonsevere, when assessing Claimant's RFC. (Tr. 14). She discussed Claimant's 2019 cervical MRI and she considered Claimant's obesity in assessing the RFC. She sufficiently accounted for these conditions in the RFC assessment, concluding that Claimant had the RFC to perform light work.

### Consideration of Medical Opinion Evidence

Claimant also argues the ALJ failed to properly review the medical opinions from his treating doctors, Ralph T. Boone, M.D., Jack E. Weaver, M.D., and Donald Elgin, M.D. He contends that the ALJ did not adequately account for the cervical MRI findings in conjunction with these opinions, instead relying upon the opinions of the state agency physicians who reviewed the record evidence which did not include the cervical MRI.

The medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, she must "articulate" in her decision "how persuasive [she] find[s]

9

all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [she] will articulate how [she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

10

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). She may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). If she rejects an opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted). An ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ specifically addressed the opinions from Dr. Boone, Dr. Weaver, and Dr. Elgin. Regarding Dr. Boone, the ALJ noted he completed a Lumbar Spine RFC Questionnaire and a medical source statement in May of 2018. (Tr. 20, 358-62, 364-69). She found the questionnaire, which included findings that Claimant could not sit, stand, or walk a total of eight hours in a workday and that he would miss three to four days of work per month, was essentially a disabling medical opinion and unpersuasive. She found the opinion was unsupported by Dr. Boone's examination of Claimant in April of 2018, where he indicated Claimant suffered only increased low back pain with range of motion. (Tr. 20, 837-38). She found the opinion was inconsistent with other evidence in the record, as Claimant's

11

physical examinations were limited to only tenderness and reduced range of motion, his pain was well controlled with medication, and he had no medication side effects. (Tr. 20, 414-19, 424-25, 839-40, 844-46, 855-74). She further found Dr. Boone's opinions on the medical source statement that Claimant could not sit, stand, and walk for eight hours total in a workday were unpersuasive for the same reasons. (Tr. 20, 364-69).

The ALJ also discussed the medical source statement completed by Dr. Weaver in January of 2020. (Tr. 21, 879-84). She found it unpersuasive because it was unsupported by Dr. Weaver's examinations of Claimant, which showed only tenderness and a reduced range of motion in the cervical and lumbar spine but normal gait, negative straight leg raises, and normal motor strength throughout. (Tr. 21, 855-60, 867-70). She also noted Dr. Weaver's notations that Claimant was doing well on his medication with no side effects. (Tr. 21, 855-70). The ALJ further found Dr. Weaver's opinion was inconsistent with other physical examinations in the record which only showed tenderness and reduced range of motion in the spine. (Tr. 21, 424-25, 839-40, 844-46).

The ALJ further considered the medical source statement completed by Dr. Elgin in January of 2020. (Tr. 21, 887-92). She found his opinion unpersuasive because it was unsupported by his treatment records. She noted his records did not extend beyond August of 2019 and did not include any abnormal examinations of

12

Claimant's neck or spine. (Tr. 21, 717-32). She further found that his opinion was inconsistent with the other evidence in the record, including the findings that typically showed only tenderness and decreased range throughout the spine (Tr. 21, 424-25, 839-40, 844-46, 871-74) and pain management records that showed his pain was well controlled with medication and no medication side effects. (Tr. 21, 414-19, 424-25, 855-70).

In addition to considering the opinions of the state agency reviewing physicians, which the ALJ found persuasive, the ALJ also considered Claimant's cervical MRI from February of 2019. (Tr. 20, 66-77, 78-91). She determined that limiting Claimant to light work was consistent with the evidence which showed Claimant exhibited degenerative changes in both the lumbar and cervical spine, but his examinations were limited to findings of tenderness and reduced range of motion. (Tr. 20, 353, 424-25, 839-40, 844-46, 852-53, 871-74). She again noted that the medical evidence showed Claimant's pain was well controlled with medication and Claimant had no medication side effects. (Tr. 20, 414-19, 424-25, 855-70).

The ALJ considered the opinion evidence and the MRI of Claimant's cervical spine. She explained why she found certain opinions unpersuasive and why she found others persuasive. There is no error with the ALJ's evaluation of the opinion evidence, and her determination that Claimant has the RFC to perform light work is supported by substantial evidence.

Claimant also asserts the ALJ failed to properly consider his consultative psychological examination by Kenny Paris, Ph.D. He specifically alleges the ALJ failed to account for Dr. Paris's opinion that based upon Claimant's symptoms, history, and examination performance, "his ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers is estimated to be below average." (Tr. 409). He maintains the ALJ should have considered Dr. Paris's opinion in combination with Claimant's mental treatment records.

Claimant underwent a psychological examination with consultative psychologist Dr. Paris in August of 2018. He reported depression, low energy, sleep disturbance, social withdrawal, passive suicidal ideation, and anxiety, stress, and worry. Claimant denied any cognitive problems. Dr. Paris assessed Claimant with dysthymia, anxiety disorder NOS, and rule out post-traumatic stress disorder. (Tr. 18, 405-10). The ALJ noted his opinion that Claimant's ability to adequately perform in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers was estimated to be below average was a "vague and unhelpful opinion" that "lack[ed] concrete or quantifiable limitations[.]" She found the opinion was unpersuasive. (Tr. 21).

The ALJ also discussed Claimant's mental health treatment at Green Country Mental Health Services. Claimant established

14

treatment in November of 2019, and then returned in December of 2019. (Tr. 19, 789-93). Claimant reported trouble sleeping, occasional nightmares, panic attacks at night, anxiety, depression, audio/visual hallucinations, anger, and paranoia. He was assessed with major depressive disorder, recurrent severe without psychotic features. He was prescribed Seroquel and Topamax (Tr. 19, 794-98).

The ALJ concluded that Claimant's mental health treatment was limited to the December 2019 visit and there was no objective evidence Claimant was experiencing significant mental symptoms, as there were no abnormal mental status examinations, in- patient treatment, or emergency room visits. (Tr. 20). The ALJ limited Claimant to occasional contact with the public. (Tr. 17). There is no error in the ALJ's evaluation of Claimant's mental RFC.

### Step-Five Determination

Claimant asserts the ALJ's hypothetical to the VE was incomplete because it failed to include all of Claimant's mental and physical limitations. This Court has determined that the ALJ's consideration of Claimant's impairments was appropriate, and the limitations included in the RFC were supported by substantial evidence. The ALJ's questioning of the VE and the subsequent vocational interrogatories accurately reflected the RFC. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate

basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment.") (citation omitted).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 28th day of March, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE